May it please the Court. My name is Judith Lott, and I am here this morning on behalf of the Petitioner Appellant Karine Terteryan. We have two board decisions in this case. We have the first decision dated July 18, 2006, and then we have a May 5, 2008 decision. The first decision seems to dispose of the emergency that we have, excuse me, an adverse credibility determination made by an immigration judge. Two of both board decisions affirm that adverse credibility determination. However, the first decision disposes of the issue of date confusion. That's in the record at page 18, where the board has found that the confusion in dates, the testimony between the year and date is not the basis of their affirmation of the adverse credibility. So I would argue that that has been disposed of by the first decision. The second board decision disposes of the issue of corroboration from the sister. That's in the record at page 2. So we're left with one issue, which is the Ms. Terteryan's failure to disclose her rape in written format in her asylum application. Kennedy, counsel, may I interrupt you for just a second? Do you agree that the only issue on appeal is asylum and not withholding of removal and not cat relief? I would agree with that, because it's a lesser burden. Yes, I would agree with that. In the asylum application itself, the applicant has stated, which is that because of the abuse that she suffered in custody, quote, I can never be a mother. I would argue that this does lead one to reasonably conclude that there was sexual assault in custody. We also have case law, case law that says additional details provided during testimony should not form the basis of an adverse credibility decision. And this is Lopez-Reyes. Is that a detail? Yes. Yes, it's an additional detail that was not specified in the application.  And that's why I'm asking you to consider whether or not the claim for past persecution is significant or not. It seems to me there's an argument to be made here, but for that fact, her claim for past persecution is a little thin, not impossible, but not real strong. And it's far from clear that anybody would consider what happened to her as to rise to the level of persecution. With that fact, the case is much more powerful. That fact isn't mentioned in the application. It is mentioned in her testimony. So that invites someone's surmise, in this case the IJ's surmise, that it was added to bolster her case, that it wouldn't have been left out of the application if it really happened. So that's why I question whether it's just a detail. It's not the color of blouse she was wearing. It's what happened to her when she, according to her testimony, was incarcerated. Well, we have case law on this issue as well, and that is Paramasi v. Ashcroft, affirmed later by KBD, which specifically addresses a failure to disclose sexual abuse, and the conclusion drawn in each of those cases by this distinguished court is that the time and place that a victim decides to disclose sexual abuse is personal to their own ability to do so, and that it has not been found to be adequate to uphold an adverse credibility determination, minus other, obviously, more additional inconsistencies. The immigration judge herself, at page 62, has given an explanation about why she was frustrated with Ms. Tertarian, clearly believing that Ms. Tertarian was not honest with her about where she had resided, either in the United States or in Armenia. It's not clear to me from the decision, but she begins the paragraph by saying probably the Ninth Circuit Court of Appeals would not particularly find these inconsistencies and lack of candidness with the court as being material to her claim. So I think we're left with only the failure to disclose the rape and the wording of the application telling us that she can never be a mother because of the abuse that she suffered. So I would ask, or I would ask the Court to do that. And that statement turned out not to be true. I mean, she doesn't contest it, contend that actually that's the case, does she? I believe that she does contend that that's the case. Okay. I can go back and look, but I recall a reference someplace to the effect that that may not be true. So I'll go see. At the time that she wrote the application, if we believe her, that's what was in her mind. Okay. But that's not the claim, is that she was raped. Whether she could have children or not is beside the point, isn't it? Yes, but certainly brutal rape could result in inability to conceive a child. And I think that's what her feelings were at the time that she wrote her application. And I'll reserve time unless there are more questions. Okay. Thank you. We'll hear from the Attorney General. Good morning. May it please the Court. Jamie Dowd on behalf of the Respondent Attorney General. I would just like to reframe the issue slightly, because we don't just have the failure to mention the rape in the application. We also have two other things that are important here. Number one that was cited was no mention that she had been accused of being involved in a shooting at the consulate, where I believe the Prime Minister was killed. The immigration judge cites the fact that she did not include this in her asylum application, but later testified to this. When she was asked to explain this, her explanation was that she could not figure out what was important enough to mention. So she didn't include the rape allegation, nor did she include the fact that the police accused her of being a part of the shooting at the ministry in which the Prime Minister was killed. But notwithstanding these inconsistencies. Was that cited as a reason for disbelieving her? Yes, Your Honor, it was. The immigration judge specifically cites it at the record 6263 as part of his adverse credibility determination. But notwithstanding the inconsistencies with regard to the rape and the shooting involvement, the immigration judge specifically points to things that she failed to corroborate. So she raised red flags by failing to include these very important details in her asylum application. And therefore, the immigration judge reasonably sought corroboration of her claim. She failed to offer evidence that she lived with the political journalist that she alleged that she lived with in Armenia. She failed to offer evidence that she was actually a university student or that the university she allegedly attended actually existed. When asked why she failed to even adduce evidence of the university's existence, her only response was you might be able to get it. And actually, the record reflects that counsel for the government looked on the internet to try to find evidence of existence of the university and was unable to do so. She failed to offer her sister as a witness to any alleged abuse, notwithstanding the fact that the sister was a California resident at the time. She failed to give detailed testimony about what types of... Explain that. Well, she said she was no longer in contact with her sister. That's her explanation for that. And apparently her brother-in-law didn't want to have anything to do with her. Correct, Your Honor. Even though the brother-in-law had been involved in the radio station that she had allegedly owned in Armenia with her husband, her sister, and her brother-in-law. And she failed to... Her only explanation for why the brother-in-law was negative about the relationship was that he thought she was going to try and live with them in America. She also failed to give detailed testimony... How did the brother-in-law get here? Excuse me? How did the brother-in-law get here? It's not clear from the record how the brother-in-law got here. But it is clear that the sister and the brother-in-law are living somewhere in California. No, but it would seem that... I mean, the record would suggest that he might have gotten here the same way as a result of political asylum. The record only reflects that the sister was granted political asylum, but not that the brother-in-law was, so I'm not sure as to what his status would be. And the basis for that political asylum? We don't know, Your Honor. She only testified that her sister received asylum, but did not testify as to what the basis for that asylum claim was, so we're not aware of what that is. The government must be aware. They checked to see whether they could find a university, but they didn't check to see on what basis her sister, who was presumably in a comparable circumstance, has got asylum. And you don't... The government, somewhere in the government files, isn't that fact? It's not in this record, Your Honor. No, not the record before this Court, which is the record that this case is based on. There's no evidence of that. The agency also included the fact that she failed to give detailed testimony about what types of political involvement she had, other than that she carried posters and criticized the country's leader. When she was asked if she tried to get any newspaper articles regarding the demonstration in which she said she participated, her response was, no, I did not need to do that. There's enormous logic in my mind. In questioning the story based on the lack of corroboration. But this case falls under the Pre-Real ID Act case law. And that case law from our court doesn't really permit the IJ to impose a corroboration requirement on the petitioner, does it? Well, the regulations require that the petitioner at all times bears the burden to prove that her story is credible. But what does our case law have to say about the requirement that the petitioner, what we call a petitioner, what at the earlier stage was called the respondent, is required to provide in addition to testimony? I mean, isn't the testimony by itself enough if it's deemed credible? If it is believable and consistent. And the lack of corroboration is not an acceptable reason for deeming it not credible. It is if the testimony is not detailed, consistent, or reliable. So in this case, we go back to the earlier reason cited, that is, the omission from the application of the alleged rape, of the alleged involvement in the shooting. The rest of the argument seems focused on the lack of corroboration. But it seems to me unless we deal with the first part, we can't get to the second part, can we? Well, that's correct, Your Honor. But like I said, the agency specifically mentioned these two glaring deficiencies in the asylum application, which notwithstanding the efforts to minimize the impact of the omissions, it's clear that the allegation of rape and the allegation of interrogation are integral to the Petitioner's claim that she – the police sought to persecute her based on her political views. Did the IAA decline to rely on that inconsistency in rendering its first decision? Did the – the immigration judge did? Yes, Your Honor. I'm sorry. Was that your question? The immigration judge mentioned that, but I thought the IA – the IJ, the BIA declined to rely on the inconsistency, for example, regarding the questioning by the police. The – the only inconsistency that the Board said it was not considering was the confusion as to the dates as to when she and her fiancé conducted interviews with military personnel. The immigration – I mean, the Board's decision says we do not consider the confusion as to the dates she conducted interviews with military personnel. Could you say that again? Yes. In the record, the Board's decision, the first page at the bottom, it says, in reaching this – well, it says, first, we find no reason to disturb the immigration judge's adverse credibility finding. And in the second sentence, it says, in reaching this, we do not consider the respondent's confusion as to the dates she conducted interviews with military personnel. So that it – so that what I said was correct? As to the interviews with the military personnel, correct, Your Honor. Which were – so there were three different inconsistencies cited by the immigration judge. That was one. Another was the failure to include the rape in the application. And the other was failure to mention the accusations. Include the rape under our law. It does not preclude her from getting asylum. So what's the third now? The third was the failure to mention that she was accused of being involved in the shooting at the ministry in which the Prime Minister was killed. And the immigration judge cites that at Record 6263. She testifies to it at Record 125 and 126. So as the court pointed out, the corroboration is not necessarily necessary under the Pre-Real ID Act. However, under the regulations, she bears the burden at all times to prove her claim. So her failure to do so means that she failures to meet her asylum burden. If there are no further questions. All right. Thank you. Thank you. Rebuttal. Briefly with regard to the incident of the Prime Minister's shooting, counsel seemed to allude to the fact that perhaps the minister was present or had witnessed something. This is not what she testified to. She testified that after the event happened, which certainly is a very historical event, it was an excuse for police to come harass her and perhaps many other political activists in Armenia. She wasn't abused during this occasion and she did not mention it in her application. She does say in her application that police harassed her family many times. And lastly, there was the second board decision, which I would argue disposes of the sister's corroboration record, too. She has reasonably explained that she was unable to obtain a corroborating statement from her sister. So that's the second decision. So we're left with the failure to mention the questioning after the shooting, not necessarily her witnessing the shooting, but her questioning after the shooting and the rape. Can I ask you, do you know why the sister is in this country? Did she get a political asylum? She received political asylum, but I did not have contact with the sister. I don't have contact with the sister. The reason I ask the question is I have seen more than one case where the IRS, INS does inconsistent things with the members of the same family and the same claims. I agree. And I was just wondering, it just seems odd that the sister would get political asylum and she wouldn't when the record would suggest that the claims may have been similar. I agree, but clearly based on this record and the testimony of Mr. Tarian, her sister was not cooperating with her. So. Well, that's actually one of the odd things about this, too. I mean, as she tells her story, the episode with the radio station, her compatriots were her husband, her sister, and her sister's husband. And now on her application, she can't get any of them or get in touch with them or provide any cooperation from any of the people that were supposed to have been her compadres. Doesn't that seem odd? It's odd, but the board was satisfied. That's all I can argue. Anything further? No. Thank you very much. We thank you. We thank both counsel for your argument. The case just argued is submitted.
judges: Korman, Clifton, Bea